## A07A1181. NICKERSON v. THE STATE.
### (652 SE2d 208)

ADAMS, Judge.

Without counsel, Kamau J. Nickerson pled guilty to reckless driving and failure to appear. Nickerson appealed on the grounds that the court did not advise him of his constitutional rights and that it accepted his plea without determining the factual basis, contentions with which the State appears to agree. A dispute arose, however, as to whether the case was properly before us, which required a remand for certain factual findings. More specifically, the parties disagree as to whether Nickerson's case was heard in the City Court of Atlanta or the Municipal Court of Atlanta, which is significant because Nickerson is only entitled to a direct appeal to this Court if he entered his plea in the city court. Upon remand, the trial court found that the case was not filed in city court.

The record shows that Nickerson was issued a citation for reckless driving on February 26, 2005, and the citation ordered him to appear in the City Court of Atlanta. A transcript from the "City of Atlanta Traffic Court" shows that Nickerson appeared and pled guilty to reckless driving and failure to appear at the originally scheduled court date. He was fined $1,353 and sentenced to twelve months to be served on probation, the terms of which included ten days in jail. The April 12 sentencing order indicates that it was issued by "The City Court of Atlanta." The order was signed by Judge Lisa

---

[6] *Reichard v. Reichard,* 262 Ga. 561, 564 (2) (423 SE2d 241) (1992).

Y. S. West as "Judge, City Court Atlanta, Georgia." Even the receipt issued for payment of the supersedeas bond is in the name of the city court, as is the bond agreement. However, the file stamp on several documents indicates the documents were filed in the municipal court.

1. The jurisdictional issue arises because prior to 2005, both the Municipal Court of Atlanta and the City Court of Atlanta (a/k/a traffic court) had jurisdiction of misdemeanor traffic offenses.[1] But only those defendants convicted in the City Court of Atlanta could appeal directly to this Court.[2] In the 2004 legislative session, however, the General Assembly abolished the city courts, including the City Court of Atlanta, by repeal of Ga. L. 1996, p. 627 — the act that created the city courts.[3] The abolishing act states that it became "effective" on January 1, 2005 but that it became "applicable" at a later time: "This Act shall be applicable only with an executed intergovernmental agreement between all affected jurisdictions."[4]

In our earlier order remanding the case for certain factual findings, this Court concluded that this provision created two effective dates for the act:

> [T]he Act appears to provide for two effective dates. Because the General Assembly is presumed to intend something by passage of each portion of a statute, we must construe each of the Act's provisions so as not to render any of it meaningless. See *Powell v. Studstill*, 264 Ga. 109, 113 (3) (b) (441 SE2d 52) (1994). The only rational construction of the Act as a whole is by finding that the Act is "effective" and "applicable" upon execution of the intergovernmental agreement between all affected jurisdictions, or January 1, 2005 — whichever is later in time.

The abolishing act also provides for how pending matters were to be handled to effect the transition:

> On the effective day of this Act, all cases and matters pending in any court abolished by Section 1 of this Act shall

---

[1] See OCGA § 40-13-21; Ga. L. 1996, p. 627, § 3.

[2] See Ga. L. 1996, p. 627, § 25 (1) (appeals of misdemeanor traffic convictions from city court may be made to "appropriate appellate court"); OCGA § 5-6-34 (a) (1) (final judgments of constitutional city courts); *Sawyer v. City of Atlanta*, 257 Ga. App. 324, 325 (571 SE2d 146) (2002) (appellate review of misdemeanor convictions in city court are made by notice of appeal to this Court). Compare OCGA § 40-13-28 (appeals from prosecution of traffic offenses in municipal court may be made to the superior court).

[3] See Ga. L. 2004, p. 885, § 1.

[4] Ga. L. 2004, p. 885, § 2.

be transferred to the municipal court of the city in which such abolished court was located.

On the effective date of this Act, each judge of a court abolished by Section 1 of this Act shall become a judge in the municipal court of the city in which such abolished court was located.[5]

But, read consistently with the above provisions, these provisions were not "applicable" until the affected jurisdictions — in this case, Atlanta, Clayton County, DeKalb County, and Fulton County — had a chance to execute the necessary intergovernmental agreements for handling cases affected by the change.

Upon the State's motion to dismiss for lack of jurisdiction, we remanded the case so that the applicable intergovernmental agreements could be included in the record for our consideration and so that the trial court could determine as a matter of law when the City Court of Atlanta ceased to exist and whether the City Court of Atlanta had jurisdiction to hear the case. The three applicable intergovernmental agreements are now in the record, and they show that the City of Atlanta entered into its intergovernmental agreement with DeKalb County on January 11, 2005; with Fulton County on May 4, 2005; and with Clayton County on May 19, 2005. Accordingly, the abolishing act became applicable on May 19, 2005, at the earliest, when the last of the three agreements was executed.[6]

While the case was on remand, the trial court heard testimony from Douglas Mincher, who testified that he was the "Court Administrator for the Municipal Court of Atlanta." Mincher testified that in December 2004, in response to the abolishing act, the City of Atlanta ordered that all cases initiated after December 10, 2004 be filed in municipal court and that any city court judge still hearing cases was considered to be sitting as a municipal court judge after January 1, 2005. Mincher added that city court forms were supposed to be modified to say "Municipal Court" but that there were instances, as in Nickerson's case, when this was not done. Mincher concluded that in 2005, "all the cases were Municipal Court cases" and that, therefore, Nickerson's case would have been filed in the Municipal Court of Atlanta. Based on this testimony alone, the court found that Nickerson's case was not filed in city court.

---

[5] Ga. L. 2004, p. 885, §§ 2, 3.

[6] Only one of the three agreements provides for an effective date; the Fulton agreement provides that it will be effective on July 1, 2005. We need not decide whether the city court continued in existence to this date given that Nickerson's judgment occurred before May 19, 2005.

The trial court's finding was erroneous. First, Mincher's testimony was hearsay, not evidence: Mincher did not make the decision about which he testified; he did not testify that he was an employee of the City of Atlanta, which purportedly made the decision; he did not testify that he was the custodian of municipal court records; nor did he offer any documentary evidence in support of his assertions. See *Poole v. State*, 229 Ga. App. 406, 408 (1) (b) (494 SE2d 251) (1997) (assistant solicitor's unsworn statement that "the state is under the impression that we are operating under contract [as a municipal court]" is not evidence) (punctuation omitted). Second, on April 20, 2005 Mincher himself notarized Nickerson's signature on his bond agreement as the "Clerk of Court" for the "City Court of Atlanta." Third, Nickerson was ordered to appear in the City Court of Atlanta, his plea hearing was held in the "City of Atlanta Traffic Court," and his sentence was signed by a judge of the "City Court of Atlanta." The fact that Nickerson's sentence bears a file stamp for the municipal court is not evidence that contradicts that a city court judge heard the case. Fourth, because the abolishing act only became applicable on May 19, 2005 at the earliest, city court judges did not become municipal court judges until that time.[7] Accordingly, the trial court's finding that the case was not filed in city court is unsupported by any admissible and relevant evidence, and it is contradicted by the abolishing act itself.

Finally, because the city court was not abolished until at least May 19, 2005, it still had jurisdiction to hear Nickerson's case. Accordingly, because Nickerson's case occurred in the city court, Nickerson's appeal was properly filed in this Court.

2. Nickerson's plea hearing was exceptionally brief. He appeared pro se, and the judge asked him how he intended to plead regarding the charge of reckless driving. Nickerson tried to plead nolo contendere, but the judge would not allow it, so Nickerson pled guilty to that charge and to failure to appear at the first scheduled hearing. The judge then reviewed Nickerson's driving record, asked him his age, and sentenced him. The judge did not ask any other questions; nor did the judge advise Nickerson of any of his constitutional rights.

The Supreme Court recently reiterated that

> the entry of a guilty plea involves the waiver of three federal constitutional rights: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to

---

[7] Thus, even though two of the intergovernmental agreements recite that "all traffic cases, with the exception of jury trials, are currently adjudicated by the Municipal Court," in fact, the judges were still city court judges.

confront one's accusers. It is the duty of a trial court to establish that the defendant understands the constitutional rights being waived, and the record must reveal the defendant's waiver of those constitutional rights. *Boykin v. Alabama*, 395 U. S. 238, 243 (89 SC 1709, 23 LE2d 274) (1969). Once a petition in a habeas proceeding challenges the validity of a guilty plea, the State has the burden to demonstrate that the plea was voluntarily, knowingly and intelligently made. The State can accomplish this by showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea; or adding to a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary.

(Citations and punctuation omitted.) *Hawes v. State*, 281 Ga. 822-823 (642 SE2d 92) (2007). None of the above requirements were met during the plea hearing. Furthermore, we find no extrinsic evidence in the record to show that the guilty plea was knowing and voluntary. See *Beckworth v. State*, 281 Ga. 41, 42 (635 SE2d 769) (2006).

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 24, 2007.

*Ernst & Young, Felicia J. Nickerson, Stephanie K. Jones*, for appellant.

*Raines F. Carter, Solicitor-General, Barbara M. Collins, Assistant Solicitor-General*, for appellee.